UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────────────x

HOWARD MILLS, SUPERINTENDENT OF
INSURANCE OF THE STATE OF NEW YORK,
IN HIS CAPACITY AS REHABILITATOR OF
FRONTIER INSURANCE COMPANY,

                Plaintiff,

      - against -                      05 Civ. 8928 (CM)

EVEREST REINSURANCE COMPANY and
BENFIELD INC., f/k/a E.W. BLANCH CO.,

                Defendants.

──────────────────────────────────────────────x

**ORDER AND DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

McMahon, J.:

Plaintiff Howard Mills, Superintendent of Insurance of the State of New York, in his capacity as Rehabilitator of Frontier Insurance Company ("Frontier"), brings this action against Defendants Everest Reinsurance Company ("Everest" or "Reinsurer") and Benfield Inc., formerly known as E.W. Blanch Co. ("Benfield" or "Blanch"). Mills seeks rescission of the Reinsurance Contract executed between Frontier and Everest on the grounds of mutual mistake, the equitable remedy of avoidance, fraudulent conveyance under New York Debtor and Creditor Law §§ 273-275, and fraud under New York Debtor and Creditor Law § 276. Mills also seeks return of all funds paid by Frontier to Everest and/or Benfield and all funds held in trust in connection with the Reinsurance Contract.

Defendants move to dismiss under Rule 12(b)(6), arguing that all six of plaintiff's claims are time-barred under the applicable statute of limitations. Alternatively, defendants move to

dismiss the Complaint for failure to state a claim upon which relief may be granted and/or to dismiss plaintiff's first cause of action for mutual mistake and sixth cause of action for fraud pursuant to Rule 9(b).

The court dismisses plaintiff's first and sixth causes of action for failure to satisfy Rule 9(b)'s heightened pleading requirements. The former is time-barred, and thus dismissed with prejudice. To the extent the latter is premised on fraud attendant to the formation of the reinsurance agreement, it too is time-barred and dismissed with prejudice; to the extent it is premised on fraud that allegedly occurred or was discovered at a later date, plaintiff is granted leave to replead this claim in conformity with Rule 9(b). Plaintiff's second cause of action is dismissed as untimely and for failure to state a claim. The remaining claims, brought pursuant to §§ 273-275 of the New York Debtor and Creditor Law, are both sufficiently plead and timely. Accordingly, defendant's motion is granted in part and denied in part.

## Facts

The relevant facts, as alleged in the Complaint and documents "integral" to the Complaint, are as follows:

Defendant Everest is a reinsurance company that provided reinsurance coverage for Frontier and two Frontier-affiliated companies, Frontier Pacific Insurance Company and Western Indemnity Insurance Company. (Complaint ("Cplt.") ¶¶ 4, 7). Blanch was the reinsurance intermediary involved in negotiating the reinsurance agreement between Everest and the Frontier entities. (Cplt. ¶ 10).

On March 25, 1999, Blanch presented Everest with, and Everest signed, the reinsurance binder (the "Binder") for the Underlying Professional Liability Excess of Loss Reinsurance

agreement between Everest and Frontier. (Helewa Decl. Ex. 1). By a letter dated March 30, 1999, Frontier submitted to Blanch a check (dated March 26, 1999) for $1,500,000 as "Deposit Premium for 1999 Underlying Professional Liability XOL Contract for QE 03/31/99." (Klabunde Decl. Ex. 1).

On April 21, 1999, Frontier signed the Placement Confirmation Signing Page provided by Blanch, confirming that "Frontier Insurance Group accepts the terms and conditions for the [Underlying Professional Liability Excess of Loss Reinsurance Agreement], as outlined in E.W. Blanch Co.'s Reinsurance Confirmation of April 13, 1999." (Krantz Decl. Ex. 2). Frontier noted, however, that its acceptance was "subject to the changes noted on the attached page." (Id.) The referenced changes consisted exclusively of Frontier's deletion of certain words from the definition of "gross net written premium." The modified definition read:

> F. "Gross net written premium" as used herein is defined as the portion of the Company's gross written premium ~~for policy limits up to and including $1M/$3M~~ for the classes of business reinsured hereunder, less cancellation and return premiums, and less premiums ceded by the Company for reinsurance which insures to the benefit of this Contract, if any.

On May 27, 1999, Frontier signed the formal Underlying Professional Liability Excess of Loss Reinsurance Contract. (Cplt. ¶ 4; Helewa Decl. Ex. 3). Everest signed the same on September 23, 1999. (Cplt. ¶ 12; Helewa Decl. Ex. 3). The policy was effective from January 1, 1999 (five months earlier than it was signed), until terminated by one of the parties, either on July 31, 2000, or on any July 31 thereafter. (Cplt. ¶ 7). The policy reflected the changes proposed by Frontier in the Reinsurance Confirmation. (Helewa Decl. Ex. 3).

Under the terms of the contract, Frontier was liable for the first $250,000 of each claim made on its policies, and Everest was liable for any amount exceeding $250,000 on each claim,

3

up to a limit of $750,000 for each claim. (Cplt. ¶ 8). Frontier was also required to retain a "corridor deductible." (Id.)

The contract required that a separate "Experience Trust Account" ("the Trust") be established to secure funds for the payment of Everest's obligations to Frontier under the contract. (Cplt. ¶ 9). Frontier was responsible for funding the Trust by depositing a percentage of the premium paid on the underlying policies plus certain credits equal to a percentage of the positive balance defined in the contract. (Id.) The Trust was established by a separate Security Fund Agreement, which was executed by Frontier, Everest and Blanch in June 1999. (Cplt. ¶ 13).

During the contract period, from January 1, 1999 through July 31, 2000, Frontier made premium payments and payments of fees and costs totaling over $40 million. (Cplt. ¶ 17). The parties elected not to renew the contract beyond the initial term, which ended on July 31, 2000. (Cplt. ¶ 7).

On August 24, 2001, plaintiff initiated a proceeding pursuant to Article 74 of New York Insurance Law, to place Frontier into rehabilitation. (Cplt. ¶ 1). On October 15, 2001, the court entered an Order of Rehabilitation, granting plaintiff's petition and appointing plaintiff as the Rehabilitator of Frontier. (Id.) The Order declared that Frontier was insolvent and had failed to cure its capital impairment. (Id.)

In his capacity as Rehabilitator of Frontier, plaintiff filed the present action in New York Supreme Court, Sullivan County, on May 26, 1999. (Joint Notice of Removal ¶ 4). The Summons and Complaint were served on defendants on September 21, 2005. (Id.) The action was removed to this court on October 20, 2005.

## Standard of Review

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether the plaintiff ultimately is likely to prevail, but whether he is entitled to offer evidence to support his claims. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998). The court assumes that all factual allegations in the complaint are true, and draws all reasonable inferences in the plaintiff's favor. EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir.2000).

As a general rule, "In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner, Inc. 937 F.2d 767, 773 (2d Cir. 1991). It is well-established, however, that the court may consider a document, even if not attached or incorporated by reference, where the complaint "relies heavily upon its terms and effect," thus rendering the document "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Accordingly, "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint," the court may consider the documents without converting the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. Id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); see also Furman v. Cirrito, 828 F.2d 898, 900 (2d Cir. 1987).

Pursuant to this exception, the court will consider (1) the Binder executed on March 25, 1999, (2) the invoice evidencing Frontier's premium payment to Blanch on March 30, 1999, and (3) the Placement Confirmation Signing Page, signed by Frontier on April 21, 1999. Because the Binder and confirmation packet govern the relationship between the parties and evidence the agreement underlying plaintiff's claims, both are integral to the Complaint. The initial premium payment is also integral because, as a transfer of funds from Frontier to Everest, it forms the basis for the plaintiff's claims under New York's Debtor and Creditor Law. While none of these documents was attached to or incorporated by reference in the Complaint, plaintiff has knowledge of each of them.

## Discussion

A. <u>The First and Sixth Causes of Action (Mutual Mistake and Fraud) Are Dismissed</u>

Defendants contend that plaintiff's first cause of action for mutual mistake and sixth cause of action for fraud were not plead with specificity, as required by Federal Rule of Civil Procedure 9(b). The court agrees.

Rule 9(b) provides that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Allegations which fail to specify the time, place, speaker and sometimes even the content of alleged misrepresentations," lack the "particulars" required by Rule 9(b). <u>Sazerac Co., Inc. v. Falk</u>, 861 F.Supp. 253, 260 (S.D.N.Y. 1994) (citing <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir. 1986)). Further, in the case of fraud, plaintiffs also must allege facts that give rise to a strong inference of fraudulent intent. <u>Acito v. IMCERA Group, Inc</u>., 47 F.3d 47, 52 (2d Cir. 1995). The primary purpose of 9(b)'s heightened pleading requirements is to "afford defendant[s] fair

notice of plaintiff's claim and the factual ground upon which it is based." Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

In this case, the Complaint lacks the requisite particularity. In alleging mutual mistake, plaintiff simply states, "The contract was made upon a mutual mistake of fact and/or with the assumption that there was a transfer of risk sufficient under [Financial Accounting Standards No. 113 ("FAS 113") and Financial Accounting Standards Board Statement No. 60 ("the Statement")] to sustain a reinsurance contract, and/or there was no legally sufficient consideration received by Frontier and/or there was a failure of consideration provided to and/or received by Frontier." (Cplt. ¶ 22). While plaintiff identifies the requirements of FAS 113 and the Statement and the sufficiency of consideration as the subject of the alleged mistake, plaintiff fails to allege any facts whatever regarding: (1) which individual representatives of Frontier, Everest and/or Blanche mistakenly concluded that the contract satisfied FAS 113 and the Statement and/or was based on fair consideration, (2) the precise nature of their misunderstanding, or (3) when and where this alleged mistake occurred.

Likewise, plaintiff's sixth cause of action fails to identify any of the circumstances surrounding the alleged fraud. Plaintiff alleges, "At the time that the contract was entered into, *and or during the subsequent course of performance and the payment by Frontier of any funds to the defendants, directly or indirectly and payment or deposit of any funds into the trust,* Frontier and/or the defendants, individually, severally, jointly or by conspiring to cause the same contract and or payments, knew with actual intent that the same obligation and transfers would hinder, delay, or defraud either present or future creditors." (Cplt. ¶ 35)(Emphasis added). To the extent this claim is premised on a theory of fraudulent conveyance, as the portion of the pleading

7

italicized above seems to be, it is dismissed as duplicative of plaintiff's third, fourth and fifth causes of action. To the extent it is based on material misrepresentations or omissions at the time of contracting or thereafter, plaintiff fails to allege which individuals made fraudulent or misleading statements, what those statements were and when they were made. Additionally, plaintiff's conclusory allegations fail to identify any facts upon which an inference of fraudulent intent can be drawn.

The question then becomes whether or not to grant plaintiff leave to replead these causes of action. Pursuant to Federal Rule of Civil Procedure 15, "Leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, denial of leave is appropriate if, *inter alia*, amendment of the complaint would be futile. See, e.g., ESI, Inc. v. Coastal Corp., 61 F.Supp.2d 35, 80 (S.D.N.Y. 1999) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)). Amendment is futile if (1) the amended pleading would not survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), or (2) in a case where fraud or mutual mistake is pleaded, numerous amendments show an inability to meet the particularized pleading requirements of Rule 9(b). Id. (internal citations omitted).

Because the court concludes that the reinsurance agreement on which plaintiff's claim of mutual mistake is based was formed prior to execution of the formal contract, plaintiff's mutual mistake claim is time-barred, and thus dismissed with prejudice. Any claim for fraud antecedent to or contemporaneous with formation of the contract is likewise untimely and dismissed with prejudice. If, however, plaintiff is alleging fraud (other than fraudulent conveyance) that occurred after the contract was formed (i.e., "during the course of performance"), the claim might be timely. Since the court cannot exclude that possibility based on the language in the

8

pleadings before it, plaintiff is granted leave to replead his fraud claim in conformity with Rule 9(b).

1. *Timeliness of Mutual Mistake Claim*

The parties agree that plaintiff's cause of action for mutual mistake is governed by a six-year statute of limitations. This six-year period begins to run when the alleged mistake or actionable wrong occurred– in this case, when the agreement was formed. N.Y. C.P.L.R. § 213(6); Zavaglia v. Gardner, 666 N.Y.S.2d 671 (2d. Dept. 1997). The relevant inquiry then is when the reinsurance agreement between Frontier and Everest was formed.

Plaintiff contends that the contract was not executed until May 27, 1999, when Frontier signed the formal reinsurance policy. This would mean that plaintiff's first cause of action, which was filed on May 26, 2005, is timely, and should be dismissed with leave to replead.

Defendants, on the other hand, assert that the parties were bound as of March 25, 1999, when the Binder was issued. If this is correct – and the court concludes that it is – plaintiff's first cause of action is time-barred, making amendment of the Complaint futile.

An insurance binder may constitute a valid contract between the parties. See Bowes & Co., Inc. v. Am. Druggists' Ins. Co., 467 N.Y.S.2d 202 (1st Dept. 1983); Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co., 670 F.Supp. 491, 498 (S.D.N.Y. 1987); see also In re Sept. 11th Liab. Ins. Coverage Cases, 333 F.Supp.2d 111, 120 (S.D.N.Y. 2004). "Delivery of the original insurance policy to the reinsurer and issuance by the latter of a formal certificate of reinsurance may not occur until much later [than issuance of the Binder], and indeed are technically unnecessary for a binding agreement." Sumitomo Marine & Fire Ins. Co. v. Cologne Reins. Co. of Am., 75 N.Y.2d 295, 302 (1990). The Appellate Division has expressly held that,

in the context of a reinsurance contract, the statute of limitations must accrue from the date of agreement on the essential terms, even if the formal contract was not executed until a later date. Bowes & Co., *supra*., 467 N.Y.S.2d at 202.

Plaintiff and defendants agree that the Binder was issued on March 25, 1999. They also agree that the Binder contained the following essential terms and conditions of the parties' reinsurance agreement: the identity of the parties involved (Everest and Frontier, among others); the subject matter of the agreement (Underlying Professional Liability Excess of Loss Reinsurance); the risk insured against (loss incurred by Frontier under its policies); the duration of the risk (continuous, beginning on January 1, 1999, with the option to terminate on July 31, 2000, or any July 31 thereafter); the amount of the coverage (in excess of the first $250,000 of ultimate net loss, but not to exceed $750,000, provided that Frontier also retain a prescribed corridor deductible); and the amount of the premiums (23.5% of the subject gross net written premium for the underwriting period plus interest credit of 1.625% quarterly of the positive cash balance in an "Experience Trust Account"). This is a rather comprehensive catalogue of terms material to a reinsurance contract.

Nonetheless, plaintiff claims that the Binder did not contain *all* of the essential terms and conditions of the agreement, and so did not constitute a valid and binding contract. Specifically, plaintiff asserts that the Binder was not an enforceable reinsurance agreement because (1) the operative terms of the related Trust Agreement had not been agreed upon as of the date the Binder was issued, and (2) Frontier modified the definition of "gross net written premium" in the Reinsurance Confirmation, which issued on or about April 13, 1999, thus presenting defendants with a counter-offer, which was not accepted until a formal policy incorporating that change was

executed on May 27, 1999.

Defendants argue that the Binder included all of the material terms and conditions of the agreement, including the material elements of the pending Trust Agreement, and so was a valid contract. Defendants also argue that Frontier's modification of a single definition in the Placement Confirmation (which came weeks <u>after</u> the signing of the Binder) did not constitute a counter-offer to the contract that was already in effect, as evidenced by Frontier's payment of the first premium almost as soon as the Binder was signed. See <u>John William Costello Assoc. v. Standard Metals Corp.</u>, 472 N.Y.S.2d 325, 327 (1st Dept. 1984); <u>Westchester Resco Co., L.P. v. New England Reins. Corp.</u>, 648 F.Supp. 842, 846 (S.D.N.Y. 1986).

The court agrees with defendants.

  (a)  Trust Agreement

"Where the parties have completed their negotiations of what they regard as essential elements, and performance has begun on the good faith understanding that agreement on the unsettled matters will follow, the court will find and enforce a contract even though the parties have expressly left these other elements for future negotiation and agreement, if some objective method of determination is available, independent of either party's mere wish or desire." <u>Metro-Goldwyn-Mayer, Inc. v. Scheider</u>, 347 N.Y.S.2d 755, 761 (N.Y.Sup.Ct. 1972).

In this case, the Binder provides that Frontier shall establish and maintain an Experience Trust Account for the benefit of Everest, and expressly states that the amount to be deposited into the Trust shall equal "85.0% of the Part A reinsurance premium ceded for the underwriting period; plus 90.0% of the credits for the underwriting period, calculated in accordance with the Credit Article; less [Everest's] losses and loss adjustment expenses paid under policies issued or

renewed during the underwriting period." (Helewa Decl. Ex. 1). Moreover, the Binder establishes that the Trust shall be maintained "in conformity with Regulation 114 of the New York Insurance Regulations," which delineates the required and permissible conditions for trust agreements established in conjunction with reinsurance contracts. Id.; N.Y. Comp. Codes R. & Regs., tit. 11, § 126 (2005).

Though the Trust Agreement was not executed until June 1999 (which, significantly, was after the policy issued on May 27, 1999), the parties agreed on the operative terms and conditions of the Trust at the time the Binder was issued by specifying that the Trust had to conform to Regulation 114. Moreover, performance under the contract began immediately upon the signing of the Binder (as evidenced by Frontier's initial premium payment), with the understanding that the Trust Agreement (like the actual policy) would follow.

Furthermore, contrary to plaintiff's contention, the language in the Binder indicates that the reinsurance agreement was not contingent on the creation of the Trust. The Binder states, "It is understood and agreed that, in the event the Experience Trust Account for any underwriting period is not fully established and maintained, it shall be deemed to be so for purposes of determining loss payments due from the Reinsurer for the underwriting period under the provisions of paragraph B of the Claims and Loss Adjustment Expense Article." (Helewa Decl. Ex. 1). This provision demonstrates that the parties contemplated the possibility of a binding reinsurance contract in the absence of an executed Trust Agreement.

Therefore, the fact that the Trust Agreement was not executed until later had no impact on the validity and enforceability of the Binder.

(b)     Modification of Terms

The court also rejects plaintiff's argument that Frontier's modification of the term "gross net written premium" in a Reinsurance Confirmation that issued three weeks after the Binder was signed constituted a rejection of the terms of the Binder and a counter-offer.

Plaintiff is correct that, "New York follows the traditional common law view, which holds that an acceptance that is conditioned on terms at variance with those in the offer operates as a counteroffer and terminates the original offer." John's Insulation, Inc. v. Siska Constr. Co., Inc., 671 F.Supp. 289, 292 (S.D.N.Y. 1987). However, because Frontier's proposed changed did not constitute a conditional acceptance, this rule is inapplicable to the case at bar.

The court has already concluded that the parties entered into a valid and binding contract when they signed the Binder on March 25, 1999. See Bowes, 467 N.Y.S.2d at 202; Teachers Ins. & Annuity Ass'n of Am., 670 F.Supp. at 498. Frontier did not propose any changes to the terms of the Binder. To the contrary, Frontier's acceptance of the terms and conditions of the Binder was evidenced by the submission on March 30, 1999, of its initial premium payment under the contract. See John William Costello Assoc., 472 N.Y.S.2d at 327; Westchester Resco Co., L.P., 648 F.Supp. at 846. At that point, there was offer and acceptance.

The Reinsurance Confirmation, in which Frontier crossed out the clause "for policy limits up to and including $1M/$3M" in the definition of "gross net written premium," was not presented to Frontier until April 13, 1999, and was not signed by Frontier until April 21, 1999 – well <u>after</u> the contract came into being. Because the Binder had already been accepted and performance under it had begun, the changes Frontier made to the subsequent document cannot be construed as a counter-offer. Frontier's change was at most a proposed modification of an

already-existing contract.  See, e.g., Commerce Funding Corp. v. Comprehensive Habilitation Serv., Inc., 2005 WL 447377, *12 (S.D.N.Y. Feb. 24, 2005).  The fact that Frontier's proposed modification was ultimately accepted by defendants and incorporated into the formal policy does not negate the fact that the parties created a valid and enforceable contract by signing the Binder and paying the initial premium.  (Helewa Decl. Ex. 3).

    2.    *Timeliness of Fraud Claim*

Fraud claims are timely if commenced within six years of the date of the fraud or within two years after the fraud was discovered, or with reasonable diligence could have been discovered, whichever is longer.  N.Y. C.P.L.R. § 213(8); Miller v. Powell, 787 N.Y.S.2d 319 (1st Dept. 2005).

The pleadings fail to identify, not only what the allegedly fraudulent conduct was, but when it occurred.  Moreover, plaintiff neither alleges any facts about when the alleged fraud was discovered, nor claims that the two-year discovery period rather than the six-year period measured from the date of the fraud should apply.

Because the Binder constituted a valid and enforceable reinsurance agreement between the parties, allegations of fraud attendant to the formation of the contract are time-barred unless the allegedly fraudulent acts could not have been discovered until on or after May 26, 2003.

The court will grant plaintiff one opportunity to replead his fraud claim and allege facts tending to show that (1) a fraud was committed on or after May 26, 1999, which is six years prior to the date the complaint was filed; or (2) a fraud was not and could not reasonably have been discovered until on or after May 26, 2003.  The court stresses, however, that leave to replead is limited to allegations of fraud based on misrepresentation or omission.  It does not

14

extend to claims of fraudulent conveyance, which are pleaded in plaintiff's third, fourth, and fifth causes of action.

B.  The Second Cause of Action (Equitable Avoidance/Rescission) is Dismissed

In plaintiff's second cause of action, he seeks equitable rescission of the reinsurance agreement or, as the parties refer to it, invocation of "the equitable remedy of avoidance." The court begins by noting that there is no recognized doctrine called "the equitable remedy of avoidance." The court interprets this cause of action, therefore, as a request for equitable rescission, which the court may exercise in its discretion. See, e.g., Allen v. WestPoint-Pepperell, Inc., 933 F.Supp. 261, 268 (S.D.N.Y. 1996).

Plaintiff alleges, "The contract is void or voidable, as the same was not a reinsurance contract as purported by its terms and/or as was represented by the parties, and/or to Frontier's creditors, and/or to its stockholder, and/or to its regulators and was made in violation of FAS 113 and the Statement, and/or the contract is in conflict with public policy, and/or the contract is in conflict with law and regulation." (Cplt. ¶ 24).

A claim for rescission is governed by a six-year statute of limitations, which accrues at the time of the wrongful conduct. N.Y. C.P.L.R. § 213(1); see also Kaufman v. Cohen, 760 N.Y.S.2d 157 (1st Dept. 2003). The allegedly wrongful conduct in this case occurred when the contract was formed. Because the court has concluded that the contract was formed on or about March 25, 1999– more than six years prior to the filing of this action– plaintiff's second cause of action is dismissed as untimely.

Moreover, the court notes that plaintiff's second cause of action fails to state a claim upon which relief can be granted. Essentially, plaintiff claims that the agreement should be

rescinded because there was a misunderstanding or misrepresentation about the sufficiency of the risk transfer, and thus the agreement's compliance with FAS 113. This is nothing more than a claim for rescission on the grounds of fraud and/or mutual mistake ab initio – i.e. the claims brought in plaintiff's first and sixth causes of action. To the extent that this cause of action rests of allegations of fraud and/or mutual mistake, it is both duplicative and not pled with particularity. Fed. R. Civ. P. 9(b). Moreover, any claim of mutual mistake *ab initio* (and probably any claim of fraud *ab initio*) is time-barred.

Finally, plaintiff also claims that the contract should be rescinded because it violates public policy, law or regulation. For a contract to be void as against public policy, it must violate "the law of the State, whether found in the Constitution, statutes or decisions of the courts." New England Mut. Life Ins. Co. v. Caruso, 73 N.Y.2d 74, 81 (N.Y. 1989) (citing Matter of Estate of Walker, 64 N.Y.2d 354, 359 (N.Y. 1985)). Plaintiff does not cite to a single statute, regulation or court decision that would void a contract based on the level of risk transfer. Instead, plaintiff asserts that "public policy mandated the adoption of FAS 113," and implies that a violation of FAS 113 is equivalent to a violation of public policy. This argument fails.

FAS 113, "Accounting and Reporting for Reinsurance of Short-Duration and Long-Duration Contracts," is an accounting guideline, not a New York law, and thus is not reflective of this State's public policy. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 160 n.4 (2d Cir. 2000). In addition, the Financial Accounting Standards have no impact on the validity of reinsurance contracts– they merely establish the conditions required before a policy may be treated as reinsurance on the books of the reinsured. Stated another way, while noncompliance with FAS 113 might effect the accounting treatment for reinsurance contracts, it does not

16

invalidate them.

C.   The Motion to Dismiss The Fraudulent Conveyance Claims is Denied

Defendants claim that plaintiff fails to plead a claim for fraudulent conveyance under New York Debtor and Creditor Law §§ 273-275. Alternatively, defendants contend that plaintiff's fraudulent conveyance claims are time-barred. The court disagrees on both accounts and denies defendants' motion with respect to plaintiff's third, fourth, and fifth causes of action.

In order to state a claim for fraudulent conveyance under New York Debtor and Creditor Law §§ 273-275, a plaintiff must allege that there is a conveyance without fair consideration and that (1) the transferor is insolvent at the time of the conveyance or will be rendered insolvent by the transfer in question (§ 273); (2) as a result of the transfer in question, the transferor is left with unreasonably small capital to conduct its business (§ 274); and (3) as a result of the transfer in question, the transferor intends or believes that it will incur debt beyond its ability to pay (§ 275). N.Y. Debt & Credit §§ 273-275. Because intent to defraud is not an element of fraudulent conveyance, such claims, as opposed to claims of actual fraud, are not subject to Rule 9(b)'s heightened pleading requirements. Sec. Inv. Prot. v. Stratton Oakmont, Inc., 281 B.R. 239, 319 (Bankr. S.D.N.Y. 1999). Rather, pleading fraudulent conveyance requires only ". . . a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a).

In this case, plaintiff has adequately pled claims for fraudulent conveyance under § 273, § 274 and § 275. The Complaint alleges that, because there was only a 1 in 100 chance that Everest would suffer any loss under the contract, "The defendants received grossly excessive and inappropriate compensation for their participation." (Cplt. ¶¶ 16, 21). The Complaint also

17

alleges that, "Frontier was insolvent at the time the contract was entered into or was rendered insolvent thereby," that, "Frontier was engaged in or about to engage into a transaction for which the property remaining in Frontier's hands was unreasonably small," and that, "Frontier knew or believed that it would incur debts beyond its ability to pay as they matured." (Cplt. ¶¶ 26, 29, 32). While relatively bare-bones, the allegations in the Complaint ". . . give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," and thus sufficiently plead a claim for fraudulent conveyance. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

The court also rejects defendants' contention that plaintiff's fraudulent conveyance claims are untimely. Like plaintiff's claims of mutual mistake, fraud and equitable rescission, plaintiff's third, fourth and fifth causes of action are subject to a six-year statute of limitations. However, unlike those claims, plaintiff's claims under §§ 273-275 are claims for fraudulent conveyance and "arise[] at the time the fraud or conveyance occurs." See N.Y. C.P.L.R. § 213(1); see also Bloomfield v. Bloomfield, 721 N.Y.S.2d 15 (2d Dept. 2001). Where there are multiple conveyances, the New York Debtor and Creditor Law requires examination of "every conveyance made." N.Y. Debt & Credit §§ 273-275.

In this case, plaintiff alleges that Frontier incrementally transferred funds to defendants which, in the aggregate, exceeded $40 million (Cplt ¶ 17). Each transfer had the effect of reducing the assets available to Frontier. Therefore, each transfer constitutes a separate conveyance for purposes of calculating the date upon which the statute of limitations accrued. Even though the March 30, 1999, transfer occurred more than six years prior to the filing of this action, and thus is beyond the statute of limitations, plaintiff's claims with respect to the

18

remaining transfers are timely.

The court rejects defendants' assertion that Frontier's multiple transfers should be "collapsed" into one transaction for the purpose of determining when the statute of limitations began to run on plaintiff's fraudulent conveyance claims. As defendants point out, there is a well-recognized exception to the rule that each transfer must be evaluated as a separate conveyance. "Where a transfer is actually 'only a step in a general plan,' an evaluation is made of the entire plan and its overall implications." In re Sunbeam Corp., 284 B.R. 355370 (Bankr.S.D.N.Y. 2002) (citing Orr v. Kinderhill Corp., 991 F.2d 31, 35 (2d Cir. 1993)). Applying this exception, courts have "collapsed" a series of transfers to assess the existence of fair consideration and the knowledge and intent of the parties, in order to determine whether or not a particular transaction constitutes a fraudulent conveyance. See, e.g., Orr, 991 F.2d at 35. This exception, however, has never been invoked for the purpose of determining whether a fraudulent conveyance claim is or is not timely under a statute of limitations. Indeed, because a new claim for fraudulent conveyance accrues at the time of each conveyance, it would be illogical and contrary to the spirit of the law to treat a series of transfers as one transaction for the purpose of determining when the statute of limitations was triggered.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss the Complaint is granted in part and denied in part.

This constitutes the decision and order of the Court.

Dated: January 23, 2006.

_____
U.S.D.J.

BY FAX TO ALL COUNSEL